**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **CARLO GEORG,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | <u>**Jury Trial Demanded**</u> |
| | ) | |
| **GINO P. BURELLI, II, MARY K.** | ) | |
| **BURELLI, as the successor in interest** | ) | |
| **and/or personal representative of her** | ) | |
| **deceased husband, David A. Burelli,** | ) | |
| **BATTAGLIA CAPITAL, LLC,** | ) | |
| **LIGHTWEIGHT-88, LLC and TOP** | ) | |
| **FLIGHT CORVETTES, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>COMPLAINT</u>

Plaintiff Carlo Georg ("Georg" or "Plaintiff") files this Complaint against defendants Gino P. Burelli, II ("G. Burelli"), Mary K. Burelli (M. Burelli"), as the successor in interest and/or personal representative of her deceased husband, David A. Burelli ("D. Burelli"), Battaglia Capital, LLC ("Battaglia"), Lightweight-88, LLC ("Lightweight-88") and Top Flight Corvettes, LLC ("Top Flight Corvettes") (collectively, "Defendants").

### <u>Preliminary Statement</u>

1.      This is an action to recover significant sums of money – currently in excess of $1 million, including interest – that Georg loaned to Battaglia to purchase unique vintage vehicles, which loan was guaranteed by G. Burelli and D. Burelli (collectively, the "Burellis"), and for which Lightweight-88 entered into a security agreement with Georg.

2.      Battaglia, the Burellis and Lightweight-88 breached their contractual commitments and associated promises, and under well-settled law, Georg is entitled to the

immediate payment of the money he is owed or is entitled to recoup his losses through the sale of any of the various vehicles pledged to him as collateral that have not been sold.

## Jurisdiction and Venue

3.     The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) in that, as alleged below, Georg and Defendants are citizens of different states, with Georg being a citizen of a foreign state, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to the claims occurred in Porter County, Indiana.

## The Parties

5.     Plaintiff Carlo Georg is an individual who is a citizen of Luxembourg.  At all times relevant herein, Georg resided in London, England.  Georg now resides in Milan, Italy.

6.     On information and belief, defendant Gino P. Burelli, II is an individual who is a citizen of Indiana, and who at all times relevant herein conducted business in Indiana.  On information and belief, G. Burelli currently resides at 2421 Legend Circle, Chesterton, Indiana 46304.

7.     On information and belief, defendant Mary K. Burelli is an individual who is a citizen of North Carolina, residing at 4609 Binfords Ridge Road, Charlotte, North Carolina, 28226.  On information and belief, M. Burelli was married to D. Burelli, who died on December 17, 2021.  As a matter of law, M. Burelli is the successor in interest and/or personal representative of her deceased husband, D. Burelli.  On information and belief, no executor/executrix has been appointed by a probate court to administer the estate of D. Burelli.

8.      Defendant Battaglia Capital, LLC is an Indiana domestic limited liability company, which, on information and belief, has its principal place of business at 1960 East Bay Pointe Drive, Bloomington, Indiana 47401.  On information and belief, D. Burelli was the managing member of Battaglia prior to his death, and Battaglia was owned and controlled by the Burellis.

9.      Defendant Lightweight-88, LLC is a Delaware domestic limited liability company, which, on information and belief, formerly operated as a foreign business entity in Indiana.  On information and belief, Lightweight-88 has its principal place of business at 500 Warnke Road, Michigan City, Indiana 46360. On information and belief, G. Burelli is the managing member of Lightweight-88, and Lightweight-88 is owned and controlled by G. Burelli.

10.     Defendant Top Flight Corvettes, LLC is an Indiana domestic limited liability company, which, on information and belief, has its principal place of business at 3414 East Michigan Boulevard, Michigan City, Indiana 46360.  On information and belief, G. Burelli is the managing member and sole member of Top Flight Corvettes, and Top Flight Corvettes is 100% owned and controlled by G. Burelli.

**Factual Allegations**

***The Credit Agreement***

11.     On or about October 18, 2019, Georg and Battaglia entered into a "Credit Agreement," dated October 18, 2019, whereby Georg lent Battaglia $725,000 for the purchase of vintage automobiles.   The Credit Agreement was signed by D. Burelli, as Manager of Battaglia. The Credit Agreement indicated that the Burellis both resided in Indiana. A true and accurate copy of the Credit Agreement is attached and incorporated as Exhibit 1.

12.     Pursuant to Section 3.1(a) of the Credit Agreement, Battaglia agreed to purchase unique vehicles with the money lent by Georg and sell such vehicles "no later than April 21, 2020."

13.     Pursuant to Section 4.1 of the Credit Agreement, Battaglia agreed to "repay the outstanding principal balance of the funds borrowed . . . forty calendar days (40) from the date when a vehicle acquired by Battaglia . . . [was] sold," but in any event no later than April 21, 2020.

14.     Similarly, Section 7.1 of the Credit Agreement provides that "Battaglia will make all payments to Georg under this Agreement [sic] immediately available funds before April 21, 2020.

15.     Pursuant to Sections 3.1(a) and (b) of the Credit Agreement, Battaglia agreed to "pay interest on the outstanding principal balance of the loans . . . at a rate of fifteen (15%) percent per annum," and to "pay interest at the rate of eighteen percent (18%) . . . on any amount owing under this Agreement which is not paid when due from the due date thereof until the amount is paid."

16.     The introductory clauses of the Credit Agreement refer to a Guarantee and a Security Agreement, which, the Credit Agreement explains, were executed concurrently with the Credit Agreement and provide for a "guarantee[ ] [of] payment of Battaglia's obligations," and a "security interest in an automobile . . . titled in the name of Lightweight-88, LLC," respectively.

17.     Section 11 of the Credit Agreement provides that Battaglia will reimburse Georg for expenses, including legal fees, disbursements and court costs incurred in connection with enforcing its rights under the Credit Agreement or the other agreements.

18.     Section 12 of the Credit Agreement provides that the Credit Agreement is governed by the law of the State of Indiana.

### *The Guarantee*

19.      On or about October 18, 2019, contemporaneously with executing the Credit Agreement, the Burellis both executed a Guarantee, dated October 18, 2019.  The Guarantee provides: "In consideration of the loan evidenced by the Credit Agreement . . . and in order to induce Georg to make the loan evidenced by the [Credit Agreement], the undersigned hereby individually, unconditionally, and irrevocably guarantees payment when due of any and all amounts owing under the [Credit Agreement]."  A true and accurate copy of the Guarantee Agreement is attached and incorporated as Exhibit 2.

20.      Under the terms of the Guarantee, the Burellis agreed that if any amount owed to Georg was not paid on a timely basis, they would pay interest at the rate of eighteen percent (18%) *per annum*, and all expenses and fees of legal counsel and court costs in connection with Georg's collection efforts pursuant to the Guarantee.

21.      Like the Credit Agreement, the Guarantee also provides that it is governed by the laws of the State of Indiana.

22.      The Burellis also agreed in the Guarantee to "submit[] to the non-exclusive jurisdiction of the courts of the State of Indiana and of the United States having jurisdiction in the State of Indiana, and agree[ed] not to raise and waive[] any objection to or defense based upon the venue of any such court and any objection or defense based upon *forum non conveniens*."

### *The Security Agreement*

23.      On or about October 18, 2019, contemporaneously with executing the Credit Agreement, Lightweight-88 executed a Security Agreement with Georg, dated October 18, 2019.  The Security Agreement was signed by G. Burelli, as Member of Lightweight-88.  A true and accurate copy of the Security Agreement is attached and incorporated as Exhibit 3.

24.    Pursuant to Section 2 of the Security Agreement, Lightweight-88 granted Georg a "security interest in a 1965 Chevrolet Corvette with Vehicle Identification Number 194375S114444" (the "1965 Corvette" or the "Collateral") to "secure payment of the Credit Agreement . . . with Battaglia," and "performance of all obligations . . . under the [Credit Agreement]."

25.    Pursuant to Section 3 of the Security Agreement, Lightweight-88 represented and warranted that it: (1) was "the owner of the Collateral," (2) "ha[d] full power to grant the security interest in the Collateral without obtaining the consent or approval of any other person, financial institution, or governmental authority," and (3) agreed to "defend its interest in the Collateral against all adverse claims and demands."

26.    Pursuant to Section 4 of the Security Agreement, Lightweight-88 agreed to not, "without the prior written consent of [Georg] . . . sell, contract to encumber, transfer, or otherwise dispose of the Collateral or any interest in the Collateral . . . unless it [wa]s the [in]tention of Lightweight-88 to pay the [Credit Agreement] in full and meet all obligations [there]under."  In Section 6 of the Security Agreement, Lightweight-88 also agreed to keep the Collateral in "good order and condition," and to hold it at a specified location in Michigan City, Indiana.

27.    Section 9 of the Security Agreement, entitled "Events of Default," provides that: "Lightweight-88 will be in default if . . . Lightweight-88 fails to make a payment on the [Credit Agreement] to [Georg] . . . when payment is due, according to the terms of the [Credit Agreement]."

28.    Section 15 of the Security Agreement provides that the agreement is governed by the laws of the State of Indiana.

29.    Pursuant to Section 18 of the Security Agreement, Lightweight-88 agreed to "pay or reimburse Georg for all reasonable out-of-pocket costs and expenses, including, but not limited to reasonable attorney fees and legal expenses incurred by Georg in connection with the enforcement of the [Credit Agreement] and th[e] [Security] Agreement."

30.    The parties to the Security Agreement agreed in Section 16 to bring any action concerning such agreement in the County of Porter, State of Indiana and to "waive any questions of personal jurisdiction or venue."

31.    On information and belief, on or around April 3, 2019, approximately six months before Lightweight-88 entered into the Security Agreement with Georg, Strokirk Ltd. ("Strokirk") filed a UCC Financing Statement (UCC-1) in Illinois, indicating that Lightweight-88 had granted a security interest to Strokirk in the 1965 Corvette.

32.    When Georg entered into the Security Agreement with Lightweight-88, neither Battaglia, Lightweight-88 nor the Burellis disclosed to him that they had already granted a security interest in the 1965 Corvette to another party.  Battaglia's, Lightweight-88's and the Burellis' failure to disclose to Georg that they had already granted a security interest in the 1965 Corvette to another party was material, intentional and fraudulent.  Had Georg known that Lightweight-88 already had already granted a security interest in the 1965 Corvette to another party, he would not have entered into the Credit Agreement.

### *The First Extension of the Credit Agreement*

33.    On or about May 10, 2020, Georg and Battaglia entered an Extension of the Credit Agreement (the "First Extension"), which was signed by D. Burelli as Managing Member of Battaglia, whereby the parties agreed to extend the maturity date of the original loan amount of $725,000 (and the interest subsequently accrued totaling $55,417) to November 21, 2020.

34.    The First Extension specified that "all provisions in the original credit agreement . . . remain valid, including the security agreement with Lightweight-88 dated 18 October 2019 and the Guarantee dated 18 October 2019."  In the First Extension, Battaglia also agreed to pledge five additional cars as collateral.  Specifically, Battaglia pledged: (1) a 2007 Mercedes Benz SL600, (2) a 2014 Porsche 911 Turbo S Cabriolet, (3) a 1957 Porsche 356A Speedster, (4) a 1976 Porsche 930 Turbo Coupe, and (5) a 1966 Porsche 911 Coupe (collectively, the "Five Collateral Cars").

35.    The Five Collateral Cars had been bought, prior to May 10, 2020, by Top Flight Corvettes, which, on information and belief, is owned and controlled by G. Burelli.

### *The Second Extension of the Credit Agreement*

36.    On or about December 8, 2020, Georg and Battaglia entered into a Second Extension of the Credit Agreement (the "Second Extension"), whereby they agreed to extend the maturity date of the original loan amount plus interest accrued as of the date of the First Extension (representing a total of $780,417), and the subsequent interest amount of $70,558 that had accrued since signing the First Extension (for a total amount of $850,975) to May 21, 2021.

37.    The Second Extension specified that "all provisions and ancillary documentation as stipulated in the original credit agreement dated 18/10/2019 remain valid, including the security agreement with Lightweight-88 dated 18 October 2019 and the Guarantee dated 18 October 2019," and that "all previous collateral pledged by Battaglia remains as is," specifically listing the Five Collateral Cars and the 1965 Corvette.

38.    The Second Extension Agreement was signed by Georg, D. Burelli in his capacity as a "Managing Member" of Battaglia, and G. Burelli.

### *Sole Payment Made and Amount Due*

39.     Georg has repeatedly made demands to Battaglia and the Burellis for payment pursuant to the Credit Agreement and the Guarantee.

40.     In or around May of 2022, G. Burelli made a single payment to Georg totaling $96,000.  To date, none of the other money owed to Georg by any of the Defendants has been paid.

41.     As of June 30, 2023, Battaglia owes Georg approximately $1,176,491 pursuant to the Credit Agreement, and G. Burelli and M. Burelli, as the successor in interest and/or personal representative of her deceased husband, D. Burelli, owe Georg the same amount pursuant to the Guarantee.

### *The Sale of Some of the Five Collateral Cars*

42.     On information and belief, one of the Five Collateral Cars – a 2007 Mercedes Benz SL600 Cabriolet (the "2007 Mercedes SL600") – was sold on February 7, 2020, *before* it was pledged as collateral to Georg in connection with the First Extension.

43.     On information and belief, another of the Five Collateral Cars – a 1966 Porsche 911 Coupe – was sold at auction for about or around $95,000 on October 14, 2021, after such vehicle was pledged to Georg in the First Extension, without any proceeds of such sale being given to Georg.

44.     A third of the Five Collateral Cars – a 1976 Porsche 930 Turbo Coupe – is currently listed for sale by a company called Mohr Imports, which is located in Monterey, California.  Accordingly, despite the fact that such vehicle was pledged to Georg in the First Extension, on information and belief, such vehicle was sold without any proceeds of such sale being given to Georg.

45.     On information and belief, the 1965 Corvette and the two other remaining Five Collateral Cars – a 2014 Porsche 911 Turbo S Cabriolet and a 1957 Porsche 356A Speedster – likely were also sold, without any proceeds of such sales being given to Georg.

**FIRST CAUSE OF ACTION**
**(Breach of Contract as Against Defendant Battaglia)**

46.     Georg realleges and reincorporates herein by reference the allegations contained in paragraphs 1 through 45 hereof.

47.     Battaglia entered into the Credit Agreement with Georg, pursuant to which Georg lent Battaglia $725,000.

48.     Georg fully honored and fulfilled all of his contractual obligations under the Credit Agreement.

49.     Georg has repeatedly made demands to Battaglia for payment pursuant to the Credit Agreement.

50.     Battaglia has not made any payments to Georg pursuant to the Credit Agreement.  The only money Georg has received to date from Defendants is a payment of $96,000 from G. Burelli in or around May 2022.

51.     Battaglia has breached the Credit Agreement by failing to repay the amounts owed pursuant to the Credit Agreement.    Initially, repayment of the full loan amount (*i.e.*, $725,000) was due on or before April 21, 2020.  Although the repayment date was extended by the First and Second Extensions, initially to November 21, 2020 and then to May 21, 2021, respectively, Battaglia still failed to make any payment to Georg.  Similarly, Battaglia has failed to make any interest payments to Georg pursuant to the Credit Agreement.

52.     Pursuant to the terms of the Credit Agreement, Battaglia owes Georg approximately $1,176,491 as of June 30, 2023.

53.     The Credit Agreement provides that Georg is entitled to recover his attorneys' fees and costs in connection with instituting any legal proceeding as a result of the breach of such agreement.

54.     As a direct and proximate result of Battaglia's breaches of the Credit Agreement, Georg has sustained damages.  Accordingly, Georg is entitled to actual, compensatory and consequential damages, and attorneys' fees and costs in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
**(Breach of Contract as Against Defendants Gino P. Burelli, II and Mary K. Burelli, as the successor in interest and/or personal representative of her deceased husband, David A. Burelli)**

55.     Georg realleges and reincorporates herein by reference the allegations contained in paragraphs 1 through 54 hereof.

56.     The Burellis entered into the Guarantee Agreement with Georg, whereby they agreed to "individually, unconditionally, and irrevocably guarantee[] payment when due of any and all amounts ow[ed] under the [Credit Agreement]," plus pay interest "at the rate of eighteen percent (18%) *per annum*."

57.     Battaglia has failed and refused to make any payments owed to Georg pursuant to the Credit Agreement.

58.     Georg repeatedly has made demands to the Burellis for payment pursuant to the Credit Agreement and the Guarantee.

59.     G. Burelli has only paid Georg $96,000 to date.  Therefore, the Burellis have failed to perform under the terms of the Guarantee.

60.     Pursuant to the terms of the Guarantee, the Burellis owe Georg approximately $1,176,491 as of June 30, 2023.

61.    On information and belief, D. Burelli died on December 17, 2021.  On information and belief, D. Burelli's widow, M. Burelli, serves as his personal representative and/or successor in interest.

62.    As a matter of law, M. Burelli, as D. Burelli's personal representative and/or successor in interest, owes Georg for D. Burelli's obligations under the Guarantee.

63.    As a direct and proximate result of the Burellis' breaches of the Guarantee, Georg has sustained damages.  Accordingly, Georg is entitled to actual, compensatory and consequential damages, and attorneys' fees and costs in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
#### (Breach of Contract as Against Defendant Lightweight-88)

64.    Georg realleges and reincorporates herein by reference the allegations contained in paragraphs 1 through 63 hereof.

65.    Lightweight-88 and Georg entered into the Security Agreement, pursuant to which (Section 5) Lightweight-88 granted Georg a "security interest in and to proceeds of the Collateral [*i.e.*, the 1965 Corvette] up to the amount owed Georg.

66.    Section 9 of the Security Agreement, "Events of Default," provides that: "Lightweight-88 will be in default if . . . Lightweight-88 fails to make a payment on the [Credit Agreement] to Georg when payment is due, according to the terms of the [Credit Agreement]."

67.    Lightweight-88 has made no payments to Georg under the Security Agreement.

68.    On information and belief, Lightweight-88 breached the Security Agreement by selling the Collateral [*i.e.*, the 1965 Corvette], or allowing it to be sold by the Burellis, and failed to make any payment to Georg.

69.     As a direct and proximate result of Lightweight-88's breach of the Security Agreement, Georg has sustained damages.  Accordingly, Georg is entitled to actual, compensatory and consequential damages and attorneys' fees and costs in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
**(Fraudulent Inducement as Against Defendants Battaglia, Gino P. Burelli, II,
Mary K. Burelli, as the successor in interest and/or personal representative
of her deceased husband, David A. Burelli, and Lightweight-88)**

70.     Georg realleges and reincorporates herein by reference the allegations contained in paragraphs 1 through 69 hereof.

71.     In Section 3 of the Security Agreement, Lightweight-88, through its Member G. Burelli, represented and warranted that it: (1) was "the owner of the Collateral," and (2) "ha[d] full power to grant the security interest in the Collateral without obtaining the consent or approval of any other person, financial institution, or governmental authority."

72.     Per UCC filing records in the State of Illinois, approximately six months before October 18, 2019 – the date that Lightweight-88 granted Georg a security interest in the 1965 Corvette – Lightweight-88 granted a security interest in the *same vehicle* to Strokirk.

73.     Accordingly, when Lightweight-88, through its Member, G. Burelli, entered into the Security Agreement with Georg where it pledged the 1965 Corvette to Georg, Lightweight-88 made material misrepresentations of existing fact that it knew to be false.

74.     Additionally, knowing that the 1965 Corvette was already pledged as collateral to another party was a material omission of fact, which should have been disclosed to Georg prior to entering into the Credit Agreement.  Had Georg known that the 1965 Corvette was already pledged as collateral to another party, he would not have entered into the Credit Agreement.

75.     Georg justifiably relied on the representations made by Lightweight-88 when entering the Credit Agreement with Battaglia, because Georg believed that his security interest in the 1965 Corvette would secure the repayment of the money owed to him under the Credit Agreement.

76.     In light of Georg's justifiable and reasonable reliance on Lightweight-88's and G. Burelli's false representations concerning the 1965 Corvette and their omissions concerning the fact that it already had been pledged as collateral to another party, Georg has suffered significant financial harm.

77.     Moreover, Battaglia and the Burellis never intended to pay Georg under the Credit Agreement or the Guarantee.  Although Georg provided Battaglia with $725,000 in October 2019, for more than two and a half years, no payment was ever made to Georg.  Indeed, the only payment made to Georg was in May 2022 by G. Burelli, not Battaglia.

78.     Even though the 1965 Corvette and some or all of the Five Collateral Cars were sold after being pledged as collateral to Georg, none of the proceeds of such sales were ever paid to Georg, even though he maintained a security interest in such vehicles.

79.     As a direct and proximate result of Battaglia's, G. Burelli's, M. Burelli's (as the successor in interest and/or personal representative of her deceased husband, David A. Burelli) and Lightweight-88's fraudulent inducement, Georg has sustained damages.  Accordingly, Georg is entitled to actual, compensatory, consequential and punitive damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(Fraud as Against Defendants Gino P. Burelli, II, Mary K. Burelli, as the successor**
**in interest and/or personal representative of her deceased husband,**
**David A. Burelli, and Top Flight Corvettes)**

80.     Georg realleges and reincorporates herein by reference the allegations contained in paragraphs 1 through 79 hereof.

81.     Top Flight Corvettes was the purported owner of the Five Collateral Cars pledged as collateral in the First and Second Extensions.

82.     However, on February 7, 2020, one of the Five Collateral Cars – the 2007 Mercedes SL600 – already had been sold *before* it was pledged as collateral to Georg in connection with the First and Second Extensions.  Accordingly, D. Burelli, G. Burelli, on his own behalf and on behalf of Top Flight Corvettes, both falsely pledged the 2007 Mercedes SL600 to Georg as collateral, knowing that it already had been sold.

83.     D. Burelli and G. Burelli, on his own behalf and on behalf of Top Flight Corvettes, both assured Georg that the 2007 Mercedes SL600 was owned and in the possession of Top Flight Corvettes at the time they entered into the First and Second Extensions.  Such statement was known to the Burellis and Top Flight Corvettes at the time to be false, and was a material false statement, which was intentionally made by the Burellis and Top Flight Corvettes to induce Georg to rely on it, and thereby not take immediate action to collect on the Credit Agreement and the Guarantee.

84.     Georg justifiably and reasonably relied to his detriment on such representation by not taking immediate action to collect on the Credit Agreement and the Guarantee.

85.     In light of Georg's justifiable and reasonable reliance on Top Flight Corvettes' and G. Burelli's false representations concerning the use of the Five Collateral Cars as

collateral for repayment of monies owed to Georg pursuant to the Credit Agreement, Georg has suffered significant financial harm.

86.    At the time of the First and Second Extensions, no payments had been made to Georg pursuant to the Credit Agreement or the Guarantee.  Accordingly, without the pledge of the Five Collateral Cars as Collateral by Top Flight Corvettes, Georg would have taken steps to collect on the monies owed him pursuant to the Credit Agreement and the Guarantee.

87.    At the time D. Burelli and G. Burelli, on his own behalf and on behalf of Top Flight Corvettes, pledged the Five Collateral Cars to Georg to secure the repayment of the money owed to Georg under the Credit Agreement, D. Burelli, G. Burelli and Top Flight Corvettes had no intention to use the proceeds from the sale of the Five Collateral Cars to repay Georg for monies owed to him under the Credit Agreement.  Such pledge was a material false statement, which was intentionally made by the Burellis and Top Flight Corvettes to induce Georg to rely on it, and thereby not take immediate action to collect on the Credit Agreement and the Guarantee.

88.    Georg justifiably relied on the representations made by D. Burelli and G. Burelli, on his own behalf and on behalf of Top Flight Corvettes, when entering the First and Second Extensions, because Georg believed that his security interest in the Five Collateral Cars would secure the repayment of the money owed to him under the Credit Agreement.

89.    In light of Georg's justifiable and reasonable reliance on D. Burelli's and G. Burelli's, on his own behalf and on behalf of Top Flight Corvettes, false representations concerning the use of the Five Collateral Cars as collateral for repayment of monies owed to Georg pursuant to the Credit Agreement, Georg has suffered significant financial harm.

16

90.     Even though, on information and belief, some or all of the Five Collateral Cars were sold after being pledged as collateral to Georg, none of the proceeds of such sales were ever paid to Georg, even though he maintained a security interest in such vehicles.

91.     As a direct and proximate result of D. Burelli's G. Burelli's and Top Flight Corvettes' fraud, Georg has sustained damages.  Accordingly, Georg is entitled to actual, compensatory, consequential and punitive damages in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
**(Unjust Enrichment as Against Defendants Gino P. Burelli, II, Mary K. Burelli, as the successor in interest and/or personal representative of her deceased husband, David A. Burelli, and Battaglia, in the Alternative)**

92.     Georg realleges and reincorporates herein by reference the allegations contained in paragraphs 1 through 91 hereof.

93.     Allowing Battaglia, D. Burelli (represented in this action by his successor in interest and/or personal representative, M. Burelli) and G. Burelli to retain the benefit provided to them by Georg, would be unjust.

94.     Georg expected payment from Battaglia and the Burellis on the money he lent them pursuant to the terms of the Credit Agreement and the Guarantee.

95.     Georg has suffered significant financial damages, exceeding $1.1 million, as a result of Battaglia's, D. Burelli's (represented in this action by his successor in interest and/or personal representative, M. Burelli) and G. Burelli's failure to repay him for the money he lent them.

96.     As a direct and proximate result of Battaglia's, D. Burelli's (represented in this action by his successor in interest and/or personal representative, M. Burelli) and G. Burelli's unjust enrichment, Georg has sustained damages.  Accordingly, Georg is entitled to actual, compensatory and consequential damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (For Negligence Against Defendant Top Flight Corvettes)

97.    Georg realleges and reincorporates herein by reference the allegations contained in paragraphs 1 through 96 hereof.

98.    Top Flight Corvettes was the purported owner of the Five Collateral Cars pledged as collateral in the First and Second Extensions.

99.    At the time the First and Second Extensions were entered into, Top Flight Corvettes was aware that the Five Collateral Cars – cars purportedly owned by Top Flight Corvettes – were pledged and re-pledged to Georg, because, on information and belief, G. Burelli owned 100% of Top Flight Corvettes, and G. Burelli controlled and was the managing member and sole member of Top Flight Corvettes.  Moreover, G. Burelli signed the Second Extension.

100.    As set forth above, at least two of the Five Collateral Cars – a 1966 Porsche 911 Coupe and a 1976 Porsche 930 Turbo Coupe – were sold by Top Flight Corvettes, without any proceeds of such sale provided to Georg.

101.    On information and belief, two of the other remaining Five Collateral Cars – a 2014 Porsche 911 Turbo S Cabriolet and a 1957 Porsche 356A Speedster – likely were also sold, without any proceeds of such sales being given to Georg.

102.    In the event that any of the Five Collateral Cars were sold after the First and Second Extensions were entered into, Top Flight Corvettes owed a duty to Georg not to disburse the proceeds from the sale of such cars, knowing that they had been pledged as collateral to Georg.

103.    Top Flight Corvettes breached its duty to Georg by selling such cars, not disbursing the proceeds from the sale of such cars to Georg, and instead, on information and belief, disbursing the proceeds to others.

104.    As a direct and proximate result of Top Flight Corvettes negligence, Georg has sustained damages.  Accordingly, Georg is entitled to actual, compensatory, consequential and punitive damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (For an Accounting as Against Defendants Top Flight Corvettes and Lightweight-88)

105.    Georg realleges and reincorporates herein by reference the allegations contained in paragraphs 1 through 104 hereof.

106.    Top Flight Corvettes was the purported owner of the Five Collateral Cars pledged as collateral in the First and Second Extensions.

107.    Lightweight-88 was the owner of the 1965 Corvette.

108.    Georg seeks an accounting from Lightweight-88 with respect to the 1965 Corvette, which was the collateral provided in connection with the Security Agreement, setting forth to whom such vehicle was sold, and to whom the proceeds of such sale were distributed.

109.    Georg also seeks an accounting from Top Flight Corvettes with respect to the Five Collateral Cars pledged to him in the First and Second Extensions.  To the extent that the Five Collateral Cars were sold by Top Flight Corvettes, Georg is entitled to an accounting, setting forth to whom such vehicles were sold, and to whom the proceeds of such sales were distributed.  To the extent that any of the Five Collateral Cars remain unsold, Georg seeks the proceeds of any future sale of such vehicles, and an order from this Court that all proceeds from the sale of such vehicles will be awarded to Georg.

WHEREFORE, Plaintiff Carlo Georg respectfully requests that a judgment be entered in his favor against Defendants, individually and collectively, as follows:

A.    Awarding Georg actual compensatory and consequential damages, in an amount no less than $725,000, plus prejudgment interest accrued thereon, against Battaglia, G. Burelli and

M. Burelli (as the successor in interest and/or personal representative of her deceased husband, D. Burelli), Lightweight-88 and Top Flight Corvettes;

B.      Awarding Georg his attorney's fees and expenses as specified in the Credit Agreement and Security Agreement against Battaglia, G. Burelli, M. Burelli (as the successor in interest and/or personal representative of her deceased husband, D. Burelli), and Lightweight-88;

C.      Awarding Georg punitive damages against Battaglia, G. Burelli, M. Burelli (as the successor in interest and/or personal representative of her deceased husband, D. Burelli), Lightweight-88 and Top Flight Corvettes;

D.      Entitling Georg to an accounting from Lightweight-88 concerning the 1965 Corvette, and an accounting from Top Flight Corvettes concerning the Five Collateral Cars; and

E.      Such other and further relief as the Court deems just and proper.

**Georg demands trial by jury.**

Dated:  July 6, 2023

**NEWBY, LEWIS, KAMINSKI & JONES, LLP**

By: /s/ Matthew J. Hagenow
      Matthew J. Hagenow, # 22378-46
      Attorney for Plaintiff
      916 Lincolnway
      La Porte  IN  46350
      Telephone (219) 362-1577